FILED
2021 Nov-02  PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| CHAD HAGGARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-00030-SGC |
| | ) | |
| TONY DORSETT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Chad Haggard ("Chad") commenced this action, pursuant to 42 U.S.C. § 1983, against Tony Dorsett ("Dorsett"), a Fort Payne, Alabama police officer assigned to the Dekalb County Drug Task Force, alleging Dorsett falsely arrested him in violation of the Fourth Amendment. (Doc. 1).[2] Pending before the court is Dorsett's motion for summary judgment, arguing no constitutional violation occurred and, regardless, Dorsett is entitled to qualified immunity. (Doc. 22). The motion has been fully briefed. (Docs. 23, 25, 27). For the reasons discussed below, the motion is due to be granted on qualified immunity grounds, and this action is due to be dismissed with prejudice.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 14).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

## I.    Facts[3]

On April 12, 2018, Dorsett and other drug task force agents went to the residence of Charles Garland Haggard ("Garland") and Jacqueline Elaine Peterman ("Peterman") to serve arrest warrants on those individuals related to the distribution of methamphetamine. (Doc. 23-1 at 7). Inside the residence, the officers found not only Garland and Peterman, but also Garland's daughter, Tina Pennington ("Pennington"); Garland's son, Chad; and Chad's wife, Courtney Cuzzort ("Courtney"). (Doc. 23-1 at 11-13; Doc. 23-4 at 23).[4] Peterman was found in a bedroom, and Garland, Pennington, Chad, and Courtney were found in the living room. (Doc. 23-1 at 11-13; Doc. 23-4 at 23). Pennington lived at the residence with Garland and Peterman, but Chad and Courtney did not and told this to Dorsett. (Doc. 23-1 at 10; Doc. 23-3 at 3-4; Doc. 23-4 at 51-52).

A photograph confirms the living room to be relatively small. (Doc. 23-9 at 4). Garland and Peterman were seated on one couch in the living room, and Chad and Courtney were seated across from them on another couch. (Doc. 23-1 at 11; Doc. 23-4 at 28-35, 55; Doc. 23-5 at 12-13, 23-24). A table was positioned at one

---

[3] The following facts are undisputed, unless otherwise noted. They are viewed in the light most favorable to Chad, as the non-movant, with Chad given the benefit of all reasonable inferences. Facts identified by the parties are not included in this section if immaterial to the disposition of the pending motion.

[4] In her testimony submitted in connection with this action, Chad's wife identifies herself both as Courtney Cuzzort and Courtney Haggard. (Doc. 23-5 at 9; Doc. 26-1). Going forward, she is identified in this memorandum opinion simply as Courtney.

end of the couch on which Garland and Pennington were seated, closest to Garland. (Doc. 23-4 at 28-35, 55; Doc. 23-5 at 12-13, 23-24). Lying on the table was a cigarette case, and inside the cigarette case Dorsett found marijuana. (Doc. 23-1 at 7-8; Doc. 23-4 at 34, 55).

Dorsett claims he opened the cigarette case after smelling the odor of marijuana and obtaining Garland's consent to search the case. (Doc. 23-1 at 8-11, 13). Chad and Courtney testified during their depositions there was no odor of marijuana in the living room upon agents' entry. (Doc. 23-4 at 25; Doc. 23-5 at 15). They also testified during their depositions that they did not remember Dorsett exchanging any words with Garland and thereafter submitted affidavits affirmatively stating Dorsett did not ask Garland for permission to search the cigarette case. (Doc. 23-4 at 51; Doc. 23-5 at 13, 17; Doc. 26-1; Doc. 26-2).

In any event, after finding the marijuana, Dorsett asked Garland, Pennington, Chad, and Courtney to whom it belonged. (Doc. 23-1 at 13; Doc. 23-4 at 37; Doc. 23-5 at 17). When no one answered, Dorsett arrested all of them, together with Peterman, for marijuana possession. (Doc. 23-1 at 7, 13; Doc. 23-4 at 37; Doc. 23-5 at 17).[5] The drug possession charges against Chad and Courtney ultimately were

---

[5] Alabama law prohibits the possession of marijuana. *See* Ala. Code §§ 13A-12-213, 13A-12-214.

dismissed.  (Doc. 23-4 at 45; Doc. 23-5 at 22).[6]  Peterman admitted the cigarette case belonged to her when deposed in connection with this case.  (Doc. 23-6 at 6).

## II.    Standard of Review

Under Rule 56, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute as to a material fact.  *Celotex Corp.*, 477 U.S. at 323.  If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute as to a material fact for trial.  *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Id.* at 248.  If the evidence is merely colorable or not significantly probative, summary judgment is

---

[6] Disposition of the drug possession charges against Garland, Pennington, and Peterman is unclear. (Doc. 23-6 at 5-6; Doc. 23-7; Doc. 23-8).  Peterman did plead guilty to distributing methamphetamine.  (Doc. 23-6 at 5; Doc. 23-7 at 1).

appropriate. *Id.* at 249-50 (internal citations omitted).  All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III.   Discussion

Section 1983 provides a federal civil cause of action for constitutional violations. *See* § 1983.  Relevant here, the Fourth Amendment protects an individual's right to be free from "unreasonable searches and seizures," U.S. Const. amend. IV, and "an arrest is a seizure of the person," *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009).[7]  Thus, a plaintiff may seek to vindicate an unreasonable arrest made in violation of the Fourth Amendment through a claim asserted under § 1983. *Watkins v. Broward Sheriff's Off.*, 771 F. App'x 902, 909 (11th Cir. 2019); *Brown v. City of Huntsville, Alabama*, 608 F.3d 724, 734 (11th Cir. 2010).

"The reasonableness of a[n] [] arrest under the Fourth Amendment turns on the presence or absence of probable cause." *Case*, 555 F.3d at 1326 (internal quotation marks omitted).  "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had

---

[7] The Fourth Amendment is applicable to the States through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

committed or was committing an offense." *Fish v. Brown*, 838 F.3d 1153, 1167 (11th Cir. 2016) (internal quotation marks omitted); *see also Maryland v. Pringle*, 540 U.S. 366, 373 (2003) ("When the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized to that person.").[8]

"Intertwined with the question of probable cause is the issue of qualified immunity." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). "The doctrine of qualified immunity provides that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Case*, 555 F.3d at 1325 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In wrongful arrest cases, [the Eleventh Circuit] ha[s] defined the 'clearly-established' prong as an 'arguable probable cause' inquiry." *Moran v. Cameron*, 362 F. App'x 88, 93 (11th Cir. 2010). That is, "[q]ualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was present." *Id.*; *see also Jones v. Cannon*, 174

---

[8] The federal law of probable cause governs in a § 1983 action, not the state law of probable cause. *Wood v. Kesler*, 323 F.3d 872, 882 n.17 (11th Cir. 2003).

F.3d 1271, 1283 n.3 (11th Cir. 1999) (noting arguable probable cause is a lower standard that actual probable cause).  "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Von Stein*, 904 F.2d at 579 (alterations adopted).

"Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime and the operative fact pattern." *Skop v. City of Atlanta, Georgia*, 485 F.3d 1130, 1137-38 (11th Cir. 2007) (internal citation omitted).  However, neither standard requires an officer to possess evidence that would establish each element of the offense, such as would be required to support a conviction. *Adams v. Williams*, 407 U.S. 143, 149 (1972) (addressing standard for probable cause); *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) (same); *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (same); *Watkins*, 771 F. App'x at 909 (same); *Scarbrough v. Myles*, 245 F.3d 1299, 1302-03, 1303 n.8 (11th Cir. 2001) (addressing standard for arguable probable cause).  "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *DeFillippo*, 443 U.S. at 36. Moreover, whether assessing probable cause or arguable probable cause, it is the information known to an officer at the time of an arrest, not the facts known to the

arrestee then or the facts known to a court later, that are relevant. *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (addressing standard for probable cause); *United States v. Allison*, 953 F.2d 1346, 1349-50 (11th Cir. 1992) (same); *Jones*, 174 F.3d at 1283, n.4 (addressing standard for arguable probable cause).

Finally, an officer who is sued civilly can rely on evidence obtained during an allegedly illegal search to demonstrate probable cause for an arrest. *Black v. Wigington*, 811 F.3d 1259, 1267-69 (11th Cir. 2016) (holding evidence obtained during illegal search of trailer provided probable cause for plaintiffs' arrest on drug and theft charges); *see also Montanez v. Carvajal*, 2016 WL 10537042, at *3 (M.D. Fla. Feb. 3, 2016) (dismissing § 1983 claims for unlawful arrest after finding outstanding child support capias and suspended driver's license located on plaintiff's person gave defendant officers arguable probable cause to arrest plaintiffs, notwithstanding allegedly illegal nature of search by which officers obtained such evidence). The exclusionary rule, which in a criminal prosecution bars evidence obtained in violation of the Constitution, does not apply in a civil suit against an officer. *Black*, 811 F.3d at 1267-69. The Eleventh Circuit has reasoned the cost of applying the rule in the civil context would be "significant," to the extent "officers could be forced to pay damages based on an overly truncated version of the evidence." *Id.* at 1268. Moreover, the deterrence benefits would be "miniscule," given officers already are deterred from violating the Fourth Amendment by

application of the rule in criminal prosecutions – which are "the primary concern and duty of the police" – and by the ability of a plaintiff to bring a civil suit for an illegal search or seizure, regardless of whether officers can rely on illegally-obtained evidence to defend against other types of claims. *Id.* Consequently, evidence obtained during an illegal search may be suppressed in a criminal prosecution pursuant to the exclusionary rule, resulting in dismissal of the criminal charges, while the same evidence may provide the basis for determining in a civil suit that an officer had probable cause for an arrest so as to defeat a § 1983 claim related to the arrest. *See id.* at 1263-64, 1267-69.

The dispositive question here is whether Dorsett had arguable probable cause to believe – that is, whether he or any other officer reasonably could have believed – Chad Haggard was in possession of the marijuana found in the cigarette case.[9] Possession of contraband may be actual or constructive, and individual or joint. *See Brooks v. State*, 321 So. 3d 1283, 1286-87 (Ala. Crim. App. 2020); *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989). Constructive possession generally is defined as the knowing ability to exercise dominion and control over an item. *See Bailey v. State*, 67 So. 3d 145, 156 (Ala. Crim. App. 2009); *United States v. Glasgow*,

---

[9] A court is not required to determine whether a constitutional right was violated before asking whether the right violated was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236 (U.S. 2009). In this case, the court exercises the discretion to bypass the initial inquiry and proceed to the clearly-established prong of the qualified immunity analysis.

658 F.2d 1036, 1043 (5th Cir. 1981); *United States v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1996). Mere presence where contraband is found, without more, will not support a conviction for constructive possession of the contraband. *See Brooks*, 321 So. 3d at 1287-89; *Jones v. State*, 2020 WL 6110620, at *3 (Ala. Crim App. Oct. 16, 2020); *United States v. Gonzalez*, 70 F.3d 1236, 1238 (11th Cir. 1995). Moreover, the Eleventh Circuit has held mere presence where contraband is found, without more, does not demonstrate probable cause, or even arguable probable cause, to arrest an individual for constructive possession of the contraband. *Holmes v. Kucynda*, 321 F.3d 1069, 1081 (11th Cir. 2003); *see also Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

Here, however, there was more. Chad Haggard was not merely present in a house where marijuana was found. He was present in a relatively small living room where marijuana was found, seated on a couch that was a matter of steps from the cigarette case that held the marijuana, which was lying on a table out in the open. It is clear the nature and size of the space were contraband is found, as well as other contextual factors, matter when determining whether there is probable cause to arrest a person for constructive possession of the contraband. *Compare Holmes*, 321 F.3d at 1081 (holding officers did not have arguable probable cause to arrest plaintiff for

constructive possession of drugs hidden in the drawer of a desk located in a room of an apartment to which the plaintiff, who was a visitor to the apartment, had no access), *and Ybarra*, 444 U.S. at 92 (holding officer did not have probable cause to search patron of public tavern at which bartender was believed to sell drugs), *with Maryland v. Pringle*, 540 U.S. 366, 372-73 (2003) (holding officer had probable cause to arrest front-seat passenger of small, private car in which drugs were found behind back-seat armrest for constructive possession of the drugs), *and United States v. Romero*, 452 F.3d 610, 617-18 (6th Cir. 2006) (holding officer had probable cause to arrest individual found in the "relatively small and confined space" of a hotel room where another individual had arranged to sell drugs to an undercover agent). The contextual factors of Chad's presence could have led a prudent officer to believe Chad had knowledge of, and the ability to exercise dominion and control over, the marijuana.

    In addition to these contextual factors, there is the fact that neither Chad nor any of the other occupants of the living room responded when asked to whom the marijuana belonged.  The failure to deny ownership of the drugs strengthens the permissible inference any or all of the occupants had knowledge of, and could exercise dominion and control over, the drugs.  *See Pringle*, 430 U.S. at 368-69, 371-62 (relevant to the court's finding of probable cause was the failure of the occupants of the car to offer any information with respect to ownership of the drugs).

11

Based on the foregoing facts and circumstances, Dorsett at the very least had arguable probable cause to believe Chad was in constructive possession of the marijuana found in the cigarette case.  The fact that Peterman later claimed ownership of the cigarette case does not alter this conclusion.  As stated, it is the facts known to an officer at the moment of an arrest that matter when assessing probable cause or arguable probable cause, not facts that may later come to light. The fact that the marijuana possession charge against Chad ultimately was dismissed does not alter the conclusion, either.  As stated, the validity of an arrest does not turn on whether the arrestee actually committed a crime.

Chad first opposes Dorsett's motion for summary judgment on the ground there are disputed questions of fact as to whether Dorsett had a legal basis for the search of the cigarette case underlying Chad's arrest – namely, whether there was an odor of marijuana in the living room and whether Garland gave Dorsett consent to search the cigarette case.  (Doc. 25).  However, as noted, Dorsett can rely on the marijuana found in the cigarette case to demonstrate probable cause or arguable probable cause for Chad's arrest, regardless of whether he came at the evidence by legal means.  Consequently, it is immaterial whether there was an odor of marijuana

in the living room or whether Garland gave Dorsett consent to search the cigarette case.[10]

Chad next opposes Dorsett's motion for summary judgment on the ground there was nothing to connect him with the marijuana other than his mere presence at Garland's house.  (Doc. 25).  This is an overgeneralized characterization of the circumstances of Chad's presence.  As discussed above, the facts of the scene in which Dorsett encountered both Chad and the marijuana gave Dorsett at least arguable probable cause to believe Chad was in constructive possession of the marijuana.  Whether those facts would be sufficient to convict Chad of constructively possessing the marijuana is a distinct and, here, irrelevant inquiry.

## IV.   Conclusion

Because Dorsett at the very least had arguable probable cause to believe Chad was in constructive possession of the marijuana found in the cigarette case, he is entitled to qualified immunity.  His motion for summary judgment (Doc. 22) is due to be granted on this ground, and this action is due to be dismissed with prejudice. A separate order will be entered.

---

[10] Dorsett urges the court to disregard the affidavits Chad and Courtney submitted, stating Dorsett did not ask Garland for permission to search the cigarette case.  (Doc. 27).  He asserts the affidavits contradict the affiants' prior deposition testimony, stating they did not remember Dorsett exchanging any words with Garland.  (*Id.*).  The undersigned declines to address this request, given whether Garland gave Dorsett consent to search the cigarette case is immaterial to disposition of the present motion.

**DONE** this 2nd day of November, 2021.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE